**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CHRYSLER REALTY COMPANY,
LLC,

                              CASE NO. 06-CV-11785

        Plaintiff,

                              PAUL D. BORMAN

-vs-                          UNITED STATES DISTRICT JUDGE

DESIGN FORUM ARCHITECTS,
INC.,

        Defendant.
_____/

**OPINION AND ORDER
(1) GRANTING DEFENDANT'S MOTION FOR CORRECTION;
AND (2) DISMISSING PLAINTIFF'S PROFESSIONAL LIABILITY CLAIM**

Before the Court is Defendant Design Forum Architects, Inc.'s ("Defendant") April 28, 2008 Motion for Correction of this Court's April 14, 2008 Order Denying Plaintiff's Motion for Reconsideration. (Doc. No. 43). The Court directed Plaintiff Chrysler Realty Company ("Plaintiff") to file a Response, which it did on May 12, 2008. Having considered the entire record, and for the reasons that follow, the Court GRANTS Defendant's motion, and DISMISSES Plaintiff's professional liability claim. This Order disposes of Plaintiff's remaining claim in the case.

On March 25, 2008, this Court entered an Amended Opinion and Order on Defendant's Motion for Partial Summary Judgment. *See Chrysler Realty Co. v. Design Forum Architects, Inc.*, – F. Supp. 2d –, 2008 WL 565323 (E.D. Mich. 2008). On April 1, 2008, Plaintiff filed a Motion for Reconsideration, in part arguing that the Court did not grant summary judgment to Defendant on Plaintiff's professional liability claim. On April 14, 2008, the Court denied

1

Plaintiff's motion, but recognized that summary judgment was only granted to Defendant on Plaintiff's breach of contract and unjust enrichment claims.

In its instant motion, Defendant contends that the Court should consider its previously-raised spoliation of evidence argument as it applies to Plaintiff's remaining professional liability claim. In its previous Order dealing with the breach of contract issue, the Court noted that it did not need to reach the spoliation question, since the Court had adequate alternative grounds to grant summary judgment on that claim. *Id.* at *7. Plaintiff responds that even if the Court finds that Plaintiff spoliated the evidence, the Court should not dismiss the professional liability claim, since the case should be properly characterized as a "design defect" case and that Defendant failed to direct discovery requests to those parties with actual knowledge of the installation of the HVAC systems.

The parties have agreed that the Michigan law of professional malpractice applies in the instant case:

> (1) A civil action for malpractice may be maintained against any person professing or holding himself out to be a member of a state licensed profession. The rules of the common law applicable to actions against members of a state licensed profession, for malpractice, are applicable against any person who holds himself out to be a member of a state licensed profession.
>
> (2) Malpractice may be given in evidence in defense to any action for services rendered by the member of a state licensed profession, or person holding himself out to be a member of a state licensed profession.

Mich. Comp. Laws § 600.2912. "To establish a prima facie case of negligence, a plaintiff must demonstrate four elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) causation; and (4) damages. *Case v. Consumers Power Co.,* 463 Mich. 1, 6 (2000). "The responsibility of an architect is similar to that of a lawyer or a physician. The law requires

the exercise of ordinary skill and care common to the profession." *Ambassador Baptist Church v. Seabreeze Heating & Cooling Co.*, 28 Mich. App. 424, 426 (1970) (internal citation omitted).

The United States Court of Appeals for the Sixth Circuit has traditionally held that federal courts should apply the state law governing spoliation of evidence in both federal question and diversity cases. *Beck v. Haik,* 377 F.3d 624, 641 (6th Cir. 2004); *but see Adkins v. Wolever*, – F.3d –, 2008 WL 746347, *2 (6th Cir. 2008) (arguing that the Sixth Circuit should reevaluate its position and apply federal law of spoliation to both federal question and diversity cases). The Michigan Court of Appeals has summarized the analysis for requested sanctions for spoliation of evidence:

> When material evidence is lost or destroyed, either intentionally or unintentionally, and "the other party is unfairly prejudiced because it is unable to challenge or respond to the evidence," a trial court is given the inherent authority to sanction the culpable party. In determining whether sanctions are required or necessary to assure a "fair playing field," [a court] must determine how important the lost or destroyed evidence is to claims and defenses asserted by the parties. . . . When lost evidence is deemed to be immaterial, sanctioning the culpable party is not merited.

*Detroit Edison Co. v. City of Detroit*, No. 257667, 2006 WL 397872, *6 (Mich. Ct. App. Feb. 21, 2006) (unpublished) (internal citations omitted). "Even when an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence that it knows or reasonably should know is relevant to the action." *Brenner v. Kolk*, 226 Mich. App. 149, 162 (1997). Finally, "[u]nder Michigan law, a *presumption* that nonproduced evidence in one party's control would have been adverse to that party applies only where there is evidence of intentional fraudulent conduct and intentional destruction of evidence. Absent evidence of intentional wrongdoing, the adverse inference is not presumed, but the finder of fact

3

*may* be *permitted* to draw an adverse inference." *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 495 (6th Cir. 2006) (emphases in original) (internal citation omitted).

The crux of the argument in support of a dismissal sanction in the instant case is that Plaintiff's intentional total destruction of the HVAC system precludes Defendant from investigating and raising all possible defenses. Faced with an allegedly non-functional HVAC system in its new premier automobile dealership, Plaintiff immediately hired William Petty, an engineer, in May 2004 to conduct an evaluation of the system, and then subsequently to supervise the original HVAC's system demolition and replacement. In doing so, Plaintiff made a conscious decision to not notify Defendant of the HVAC problems, or otherwise to allow Defendant to cure the alleged defects. By the summer of 2004, Defendant's HVAC system had been scrapped. Plaintiff's intention to sue Defendant was manifested by the request that Petty compile a report of the problems with the original HVAC system. In November 2004, Plaintiff then used Petty's report as the basis of a demand letter to Defendant seeking substantial damages incurred in replacing the HVAC system.

In the instant litigation, Plaintiff retained Petty as both a fact and expert witness on Defendant's HVAC design – with all the benefit of first-hand observations to inform his analysis. Further relevant is the fact that Plaintiff never sent Defendant a notice of any defects in the HVAC system. Defendant maintains that the intentional denial of the opportunity to conduct an inspection of the operation of the HVAC system deprives it of all possible defenses – including improper maintenance, installation, manufacturing defects, and improper use.

Plaintiff essentially responds that the Court could view the instant case as a "design defect" case – where both sides would be able to present expert testimony on whether the

theoretical design would work, while excluding evidence of all "actual" observations of the system. Furthermore, Plaintiff suggests that additional discovery directed at the contractor and subcontractors could provide Defendant with a possible defense of improper installation.

In considering whether a dismissal sanction is warranted in the instant case, the Court finds relevant the Wisconsin Court of Appeals case *Harborview Office Center, LLC v. Camosy, Inc.*, 712 N.W.2d 87, 2006 WL 335500 (Wis. Ct. App. Feb. 15, 2006) (unpublished table opinion). In *Harborview*, the plaintiff entered into an agreement with a general contractor to construct an office building. *Id.* at *1. After the building was completed, the plaintiff discovered evidence of water infiltration during rainstorms. *Id*. The plaintiff then notified the various entities involved in the building's construction in an attempt to locate the source of the leak. *Id*. The entities were able to slow the water infiltration, but not stop it. *Id*.

The plaintiff then filed a lawsuit against the general contractor and the other entities involved in the building's construction. *Id*. at *2. The parties retained experts to comment on the causes of the water infiltration and possible solutions. The plaintiff's expert, an architect, concluded that in order to correct the water problem, it would be necessary to reinstall or to replace certain parts of the building's window system. *Id*. During the window remediation effort, the plaintiff's expert discovered that the water leaks were a result of cracked V-grooves, and not inadequate window installation. *Id*. at *4. The plaintiff never informed the defendants of the discovery of the V-groove problem. The plaintiff then replaced 98% of the cracked V-grooves. *Id*.

The trial court dismissed the plaintiff's case based on spoliation of the evidence, concluding that the plaintiff had an obligation to stop the work and to notify the defendants of

the V-groove problem before destroying the evidence. *Id*. at *5.

On appeal, the Wisconsin court rejected the plaintiff's arguments and upheld the trial court's decision to dismiss the case, concluding in relevant part:

> [T]here is no evidence that in the record that either [the plaintiff] or its experts notified the respondents before September 12 that water testing had identified the cracks in the V-grooves as a source of water infiltration and were being more extensively repaired for that reason. The respondents would not have had any reason to ask questions or suspect anything was amiss. Further, it was [the plaintiff's] duty to stop the work on the V-grooves and notify the respondents of the discovery that the V-grooves may have contributed to the water problems.
> . . . .
> [The plaintiff's] reworking or repairing of the V-grooves permanently altered their physical condition. Because of [the plaintiff's] actions, the respondents can no longer test or analyze the V-grooves in their original state and we will never be able to know the extent to which this damages the respondents' ability to present a defense.

*Id*. at *9, 10. Other courts have reached similar conclusions. *See, e.g., Thiele v. Oddy's Auto and Marine, Inc.*, 906 F. Supp. 158, 161-62 (W.D.N.Y. 1995) ("Though drastic, the sanction [of dismissal] has increasingly been awarded against parties who bring suit with knowledge that their own actions, or even those of a third party, have caused the loss or destruction of allegedly defective products or parts, and have known that the destruction would result in irreparable injury to another party's ability to defend the suit") (collecting cases); *Kirkland v. New York City Housing Auth.*, 666 N.Y.S.2d 609, 612-13 (N.Y. App. Div. 1997) (sanctioning a housing authority with dismissal of a third party complaint against a contractor based on his installation of gas stove, where the housing authority had destroyed the stove).

In the instant case, Plaintiff had a duty to preserve evidence that was relevant to its contemplated lawsuit. *Brenner*, 226 Mich. App. at 162. Instead, without informing Defendant of the HVAC problems, Plaintiff hired Petty to evaluate the situation, to demolish the existing HVAC system, and to install a more expensive HVAC system – and now seeks to have

6

Defendant essentially reimburse it for the new system. Further, Petty, the proposed expert, profited as the replacement HVAC installer; any testimony is undercut by his conflict of interest.

Before dismissing a claim based upon spoliation of evidence, the Court must consider whether lesser sanctions could level the playing field. Plaintiff suggests a two-fold approach of permitting Defendant to have a period additional third-party discovery and/or bar Petty from testifying as a fact witness. However, Plaintiff's proposed sanctions do not level the playing field. Even if the Court permitted a battle of the experts' theoretical opinions on whether the design itself was feasible, without including any direct factual testimony, Defendant would still be severely prejudiced. Since Plaintiff neither permitted Defendant to inspect the original HVAC system, nor preserved this crucial evidence that it exclusively controlled, it is impossible to gauge to what extent, if any, other factors – manufacturing defects, incorrect installation, or improper maintenance – were potential causes of the system's alleged failure. *See Harborview*, 2006 WL 335500, at *10. In other words, the original HVAC system may have been designed correctly, yet other factors outside Defendant's control may have impeded its effectiveness. Finally, even if the Court were to simply strike Petty from testifying as both a fact and expert witness, the same problem would exist.

Plaintiff acted "helter skelter" to remedy an allegedly adverse situation without providing Defendant with notice and an opportunity to evaluate and correct that situation. Plaintiff destroyed the scenario and the evidence, thereby preventing Defendant from sustaining a defense. This drastic conduct warrants the Court's drastic dismissal of Plaintiff's professional liability claim.

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Correction, and

7

**DISMISSES** Plaintiff's Professional Liability claim. This Order closes the instant case.

**SO ORDERED.**

                                           s/Paul D. Borman
                                           PAUL D. BORMAN
                                           UNITED STATES DISTRICT JUDGE

Dated: May 30, 2008

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on May 30, 2008.

                                           s/Denise Goodine
                                           Case Manager