UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRYSLER REALTY COMPANY, LLC,

               Plaintiff,               Civil Action No.
                                         06-CV-11785

vs.

                                         PAUL D. BORMAN
DESIGN FORUM ARCHITECTS, INC.,       UNITED STATES DISTRICT JUDGE

               Defendant.
_____/

## OPINION AND ORDER REINSTATING DISMISSAL OF PLAINTIFF'S PROFESSIONAL NEGLIGENCE CLAIM

### I.  INTRODUCTION

This is a breach of contract, unjust enrichment, and professional negligence case.  On March 25, 2008, the Court granted summary judgment in favor of Defendant on the breach of contract and unjust enrichment claims, *see* docket entry 39, and the Sixth Circuit affirmed.  *See Chrysler Realty Co., LLC v. Design Forum Architects, Inc.*, No. 08-1771, 2009 WL 1872444 (6th Cir. June 30, 2009) (unpublished).  Therefore, the breach of contract and unjust enrichment claims are no longer in issue.

The Court also dismissed Plaintiff's professional negligence claim based on Michigan spoliation law.  *See* docket entry 48.  Specifically, the Court determined in its May 30, 2008, Opinion and Order that Plaintiff spoliated evidence in this case and that, under Michigan spoliation law, dismissal of its professional negligence claim was the proper sanction.

However, after the Court's ruling, a new case was decided in the Sixth Circuit requiring that federal spoliation law be applied.  *See Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009).

1

Accordingly, the Sixth Circuit remanded the professional negligence claim for reconsideration in light of the intervening change in law.

Following the Sixth Circuit's decision, the Court issued an order providing the parties an opportunity to brief the issue in light of *Adkins*. *See* docket entry 68. Both parties have submitted briefs. Having thoroughly considered this matter, the Court finds that Michigan spoliation law, on the one hand, and federal spoliation law, on the other hand, are not materially different and, accordingly, will reinstate the dismissal on spoliation grounds – but this time, based on federal spoliation law pursuant to *Adkins*.

## II. BACKGROUND

The background has been summarized by the Court in its March 25, 2008, Amended Opinion and Order and by the Sixth Circuit in its June 30, 2009, opinion. The Court assumes the parties' familiarity with the record. For convenience, the background, as succinctly summarized by the Sixth Circuit, is reproduced:

> On October 13, 2003, Chrysler Realty Company, LLC (CRC), contracted with Design Forum Architects, Inc. (Design Forum), to design heating, ventilating, and air conditioning (HVAC) systems for a prototype auto dealership in Las Vegas, Nevada.
> 
> Design Forum completed its work by the agreed January 15, 2004, deadline, and left the maintenance and upkeep of the HVAC systems to the dealer. Several months after the project was completed, in April 2004, the dealer complained to CRC that the HVAC systems were not performing adequately. However, CRC did not notify Design Forum of the purported defects and did not provide Design Forum with an opportunity to inspect the systems. Instead, CRC hired another engineer to remove and destroy Design Forum's equipment and to completely install new systems.
> 
> On November 11, 2004, CRC notified Design Forum, for the first time, that its systems had not been working properly, that CRC had removed and destroyed Design Forum's entire installation, and that new systems had been installed. CRC demanded $1.4 million in replacement costs. This suit

followed . . .

*Chrysler Realty Co.,* 2009 WL 1872444, at *1.

### III. ANALYSIS

#### A. The Positions of the Parties

Defendant argues that federal law on spoliation supports the Court's decision to dismiss Plaintiff's professional negligence claim and urges the Court to reaffirm the dismissal of the claim. Plaintiff, on the other hand, argues just the opposite. That is, Plaintiff contends that the Court should decline to impose *any* sanctions in this case because (1) it did not have a duty to preserve the evidence at the time it was destroyed, (2) it did not destroy any evidence with a culpable state of mind, and (3) Defendant has not suffered any prejudice from the destruction of evidence (i.e., the evidence destroyed is not relevant). Alternatively, Plaintiff argues that if sanctions are to be imposed, dismissal is not warranted because less drastic sanctions would level the evidentiary playing field. Plaintiff's present arguments are identical to the ones already advanced and rejected by the Court.

#### B. Federal Spoliation Law is the Same as Michigan Spoliation Law

As recently summarized by another judge in this district,

> "[s]poliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). "[S]poliation is not a substantive claim or defense but a 'rule of evidence,' and thus is 'administered at the discretion of the trial court.'" *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir.1995)). The Sixth Circuit has recently recognized that federal law governs spoliation sanctions in all federal court cases, thereby bringing the case law in the Sixth Circuit "in line with other courts of appeals." *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc). As the Sixth Circuit has explained, there are two reasons for applying federal law with regard to

3

spoliation issues:

> First, the authority to impose sanctions for spoliated evidence arises not from substantive law but, rather, "from a court's inherent power to control the judicial process." Second, a spoliation ruling is evidentiary in nature and federal courts generally apply their own evidentiary rules in both federal question and diversity matters.

*Id*. (citations omitted). As articulated by the Second Circuit,

> a party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

> *Residential Funding Corp. v. Degeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-112 (2d Cir. 2001)). "The burden is on the party seeking to use the evidence to show the existence of each criterion." *See Jandreau v. Nicholson*, 492 F.3d 1372, 1375 (Fed. Cir. 2007).

*Forest Labs., Inc. v. Caraco Pharm. Labs., Ltd.*, No. 06-CV-13143, 2009 WL 998402, at \*\*1-2

(E.D. Mich. April 14, 2009) (unpublished).

### 1.  *Duty to Preserve Evidence*

With regard to the first element of the *Residential Funding* framework, the duty to preserve

evidence,

> "[i]t goes without saying that a party can only be sanctioned for destroying evidence if it had a duty to preserve it." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y.2003). "If [a party] had no such duty, then [it] cannot be faulted. *See id.* "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). *See also Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) ("[t]he

> duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation"). Thus, the first step in the analysis is to determine the "trigger date," or "the date a party is put on notice that it has a duty to preserve evidence." *See Clark Constr. Group, Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn.2005). "Any destruction of potentially relevant evidence that occurs before the trigger date would be harmless, since the party was unaware of a need to safeguard evidence. The destruction of documents and evidence after the trigger date, however, is not allowed." *Id*.

*Forest Labs., Inc.*, 2009 WL 998402, at \*2.

Michigan spoliation law is substantially identical regarding a party's obligation to preserve evidence. In the Court's May 30, 2008, Opinion and Order in which it found that dismissal of Plaintiff's professional negligence claim is the proper sanction in this case, the Court noted that under Michigan law, "'[e]ven when an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence that it knows or reasonably should know is relevant to the action.'" May 30, 2008, Op. and Or. at 3 (quoting *Brenner v. Kolk*, 226 Mich. App. 149, 162 (1997)).

2. *Culpability*

With regard to the second element of the *Residential Funding* framework, culpability, as summarized by the court in *Forest Labs., Inc.*,

> [a]ccording to the Sixth Circuit, "failures to produce relevant evidence fall 'along a continuum of fault-ranging from innocence through the degrees of negligence to intentionality' . . ." *Adkins*, 554 F.3d at 652 (quoting *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988), *overruled in part on other grounds by Adkins*, 554 F.3d at 652). "Once the duty to preserve attaches, any destruction of [evidence] is, at a minimum, negligent." *Zubulake*, 220 F.R.D. at 220. Therefore, "[t]he three possible states of mind that satisfy [the culpability] requirement are [1] bad faith destruction, [2] gross negligence, and [3] ordinary negligence." *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008).

*Forest Labs., Inc.*, 2009 WL 998402, at *5. In sum, "a court need not find bad faith or intentional misconduct before sanctioning a spoliator." *Klezmer ex rel. Desyatnik v. Buynak*, 227 F.R.D. 43, 50 (E.D.N.Y. 2005). *See also Doe v. Norwalk Cmty. Coll.*, 248 F.R.D. 372, 379 (D. Conn. 2007) ("a culpable state of mind is established by ordinary negligence"). However, "the more culpable state of mind [bad faith or intentional misconduct] lessen[s] the burden of showing relevance." *Equal Employment Opportunity Comm'n v. LA Weight Loss*, 509 F. Supp.2d 527, 538-539 (D. Md. 2007). In other words,

> [t]he more culpable the state of mind, the easier it is for the party seeking a spoliation adverse inference instruction to demonstrate the third element [of the *Residential Funding* framework]-relevance. "When evidence is destroyed in bad faith (i.e. intentionally or willfully), that fact alone is sufficient to demonstrate relevance. By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions."

*Thompson v. United States Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93 (D. Md. 2003) (quoting *Zubulake*, 220 F.R.D. at 220).

Again, Michigan spoliation law is substantially the same. As the Court noted in its May 30, 2008, Opinion and Order, under Michigan law, "'[w]hen material evidence is lost or destroyed, either intentionally *or* unintentionally, . . . a trial court is given the inherent authority to sanction the culpable party." May 30, 2008, Op. and Or. at 3 (emphasis added) (quoting *Detroit Edison Co. v. City of Detroit*, No. 257667, 2006 WL 397872, at *6 (Mich. Ct. App. Feb. 21, 2006)).

### 3. *Relevance*

Finally, with regard to the third element of the *Residential Funding* framework, relevance,

> "[t]he burden falls on the 'prejudiced party' to produce 'some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files.'" *Byrnie*, 243 F.3d at 108 (2d Cir. 2001) (quoting *Kronisch* [*v. United States*, 150 F.3d 112, 128 (2d Cir. 1998)]).

> "[R]elevant" in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence. Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that "the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction." *Kronisch*, 150 F.3d at 127; *Byrnie*, 243 F.3d at 110.

*Residential Funding*, 306 F.3d at 108-109 (footnote omitted). The Fourth Circuit, for example, "describes the test for relevant evidence necessary to impose sanctions as that evidence which would 'naturally have been introduced into evidence.'" *Sampson*, 251 F.R.D. at 179-180 (quoting *Vodusek*, 71 F.3d at 156). However,

> [c]ourts must take care not to "hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence," because doing so "would subvert the ... purposes of the adverse inference, and would allow parties who have ... destroyed evidence to profit from that destruction." *Kronisch*, 150 F.3d at 128; *Byrnie*, 243 F.3d at 110.

*Residential Funding*, 306 F.3d at 109. Moreover, . . .

> [w]hen evidence is destroyed in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance. By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions.

*Zubulake*, 220 F.R.D. at 220 (footnote omitted).

*Forest Labs.*, *Inc.*, 2009 WL 998402, at **6-7.

Michigan law regarding relevance appears to be identical to its federal law counterpart. Under Michigan law, as the Court noted in its May 30, 2008, Opinion and Order, sanctions may be appropriate where the lost or destroyed evidence is "'material.'" May 30, 2008, Op. and Or. at 3 (quoting *Detroit Edison Co.*, 2006 WL 397872, at *6). In other words, as the Court previously noted, "'[w]hen lost evidence is deemed immaterial, sanctioning the culpable party is not merited.'"

*Id.* (quoting *Detroit Edison Co.*, 2006 WL 397872, at *6).

In addition, like federal law where evidence is presumed relevant if it is destroyed in bad faith, *see Zubulake*, 220 F.R.D. at 220, so too is the case under Michigan law. As the Court previously noted,

> "[u]nder Michigan law, a *presumption* that nonproduced evidence in one party's control would have been adverse to that party applies only where there is evidence of intentional fraudulent conduct and intentional destruction of evidence. Absent evidence of intentional wrongdoing, the adverse inference is not presumed, but the finder of fact *may* be *permitted* to draw an adverse inference."

May 30, 2008, Op. and Or. at 3 (quoting *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 495 (6th Cir. 2006) (applying Michigan law) (emphasis in original) (internal citation omitted)).

### C. Discussion

As discussed above, Michigan spoliation law is substantially identical to its federal law counterpart. The Court has already determined that dismissal of Plaintiff's professional negligence claim is warranted under Michigan spoliation law. Because there is no apparent difference between Michigan spoliation law and federal spoliation law, dismissal is also warranted under federal law.

#### 1. *Duty to Preserve*

With regard to the duty to preserve evidence, the Court already determined that "Plaintiff's intention to sue Defendant was manifested by the request that Petty compile a report of the problems with the original HVAC system." May 30, 2008, Op. and Or. at 4. This request was made of Petty in May 2004. It was at this time when Plaintiff "reasonably should [have] know[n] that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591. Because the HVAC system was scrapped *after* this point in time, Plaintiff breached its duty under federal law to preserve

8

evidence in this case.[1]

### 2. *Culpability*

The Court did not explicitly discuss in its May 30, 2008, Opinion and Order the second element of the *Residential Funding* framework—culpability—other than to note that "Plaintiff acted 'helter skelter' to remedy an allegedly adverse situation without providing Defendant with notice and an opportunity to evaluate and correct the situation." May 30, 2008, Op. and Or. at 7. To the extent it was not clear previously, Plaintiff acted, at the very least, negligently when it removed and destroyed Defendant's entire installation without first affording Defendant an opportunity to inspect and correct the problem. *See Zubulake*, 220 F.R.D. at 220 (stating that "[o]nce the duty to preserve attaches, any destruction of [evidence] is, at a minimum, negligent"). Because "a culpable state of mind is established by ordinary negligence," the second element of the *Residential Funding* framework is satisfied in this case. *See Doe*, 248 F.R.D. at 379.

### 3. *Relevance*

The third element of the *Residential Funding* framework, relevance, is also satisfied here. The burden is on "the party seeking an adverse inference," Defendant in this case, to "adduce sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed evidence would have been of the nature alleged by the party affected by its destruction.'" *Residential Funding*, 306 F.3d at 109 (quoting *Kronisch*, 150 F.3d at 127; *Byrnie*, 243 F.3d at 110).

---

[1] Plaintiff argues that "the mere fact that [it] asked William Petty to report on his findings, does not, without anymore more, prove that [it] intended to sue [Defendant]." The Court rejects this argument. Plaintiff probably should have reasonably anticipated litigation even before it hired Petty – when the newly-installed HVAC system stopped working properly. But in any case, Plaintiff should have certainly reasonably anticipated litigation by May 28, 2004, the date on which it hired Petty to replace the evaporative cooling system.

In its May 30, 2008, Opinion and Order, the Court stated that the discarded evidence was "crucial." As stated by the Court, "[s]ince Plaintiff neither permitted Defendant to inspect the original HVAC system, nor preserved this crucial evidence that it exclusively controlled, it is impossible to gauge to what extent, if any, other factors – manufacturing defects, incorrect installation, or improper maintenance – were potential causes of the system's alleged failure." May 30, 2008, Op and Or. at 7. All of the arguments presently advanced by Plaintiff in support of its position that the discarded evidence is irrelevant have already been considered and rejected by the Court.

Finally, Plaintiff argues that the Court previously "failed to consider the availability of lesser sanctions." This statement is patently false. In its May 30, 2008, Opinion and Order, the Court considered the less drastic sanctions proposed by Plaintiff and concluded that they "do not level the playing field." May 30, 2008, Op. and Or. at 7. The Court's previous analysis involving less drastic sanctions applies with equal force after *Adkins*.

## V. CONCLUSION

In sum, because federal spoliation law is substantially identical to Michigan spoliation law for the purposes of this case, the Court's previous analysis and conclusions apply with equal force after *Adkins* except that the state law discussed in the Court's May 30, 2008, Opinion and Order must be replaced with the identical federal law discussed in Section III(B), above. Accordingly, for the reasons discussed above, and for the reasons stated in the Court's May 30, 2008, Opinion and Order, the Court reinstates the dismissal of Plaintiff's professional negligence claim – this time based on federal spoliation law. *See Adkins*, 554 F.3d at 651.

SO ORDERED.

                    S/Paul D. Borman  
                    PAUL D. BORMAN  
                    UNITED STATES DISTRICT JUDGE

Dated: December 31, 2009

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 31, 2009.

                    S/Denise Goodine  
                    Case Manager